# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JANICE ELAINE BUTTON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:20-cv-00590** |
| v. | ) | **Judge Campbell/ Frensley** |
| | ) | |
| ANDREW SAUL, | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record, which she filed as a combined Motion/Supporting Memorandum. Docket No. 20. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 21. Plaintiff has filed a Reply. Docket No. 22.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed her application for Supplemental Security Income ("SSI") on

February 21, 2018 alleging that she had been disabled since March 7, 2013 due to severe anxiety, ovarian cyst, and fibromyalgia. *See, e.g.,* Docket No. 18, ("TR"), pp. 104-105. Plaintiff's application was denied both initially (TR 102) and upon reconsideration (TR 123). Plaintiff subsequently requested (TR 133-135) and received (TR 27-61) a hearing. Plaintiff's hearing was conducted on July 23, 2019, by Administrative Law Judge ("ALJ") Michelle Alexander. TR 27-61. Plaintiff, Vocational Expert Pedro Roman, and witness Michael Ramey appeared and testified. TR 27.

On August 6, 2019, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 22. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since February 21, 2018, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: fibromyalgia, vision deficits, persistent depressive disorder and generalized anxiety disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except can occasionally climb ramps and stairs, no climbing ladders, ropes and scaffolds. Can frequently balance, occasionally stoop, kneel and crouch, no crawling. Can frequently hand[le] and finger with bilateral hands. Must avoid concentrated exposure to extreme cold. No work with or near dangerous and moving types of equipment or machinery, moving mechanical parts and unprotected heights. Can understand, remember and apply simple and routine instructions and tasks. Can interact

2

occasionally with supervisors, co-workers and the general public. Can maintain concentration, persistence, and pace for 2 hours at a time over an 8-hour workday and can adapt to infrequent changes in a work setting.

5.     The claimant has no past relevant work (20 CFR 416.965).

6.     The claimant was born on May 25, 1971 and was 46 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since February 21, 2018, the date application was filed (20 CFR 416.920(g)).

TR 13-21.

On September 5, 2019, Plaintiff timely filed a request for review of the hearing decision. TR 164-66. On May 26, 2020, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

3

testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III.  CONCLUSIONS OF LAW

**A.  Standard of Review**

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

4

If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42

5

U.S.C. §423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th

Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[1] The Listing of Impairments is found at 20 CFR §404, Subpt. P, App. 1.

6

claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR §404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that: 1) the ALJ failed to adequately consider Plaintiff's physical and mental impairments; 2) the ALJ failed to adequately develop the record; and 3) the residual functional capacity ("RFC") the ALJ articulated in her decision was more restrictive than the RFC in the hypothetical question to the VE at the hearing. Docket No. 20, p. 2-10. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. §405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of §405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with

7

or without remanding the cause for a rehearing.

42 U.S.C. §§405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

As an initial matter, Plaintiff makes several references to the Commissioner's earlier final and binding decision and the supporting evidence denying Plaintiff's prior applications for disability benefits, specifically the findings of Dr. William O'Brien. *See* Docket No. 20, p. 2, 7, 11; Docket No. 22, p. 1. Plaintiff argues that Dr. O'Brien's "part" should be removed from the record because he was practicing without a license when he conducted Plaintiff's psychiatric evaluation as related to her prior application for disability benefits. *See* TR 65-74; Docket No. 20, p. 7; Docket No. 22, p. 1. Dr. O'Brien's findings are present in the prior unfavorable ALJ hearing decision, dated March 7, 2013. TR 62-81. The appeals council subsequently denied Plaintiff's request for review on May 6, 2014, making that decision final and binding and not subject to judicial review in this instance. TR 82-84. Further, there is no indication that the ALJ in the case at bar gave any weight or consideration whatsoever to Dr. O'Brien's findings. TR 8-26. Instead, the ALJ relied upon the findings of several other medical professionals in the years following Plaintiff's first denied application when making her findings. *See* TR 19-20. For these reasons,

8

Plaintiff's claim fails.

**1. The ALJ Failed to Consider Plaintiff's Physical and Mental Impairments**

Plaintiff implies that the ALJ failed to consider her physical impairments, namely fibromyalgia, as well as her mental impairments, when making her disability determination and assessing her Residual Functional Capacity (RFC). *See* Docket No. 20, p. 3. Defendant responds that the ALJ found Plaintiff's fibromyalgia, persistent depressive disorder, and anxiety to be severe impairments, and that the ALJ adequately considered the medical evidence, along with Plaintiff's subjective complaints of pain, when determining Plaintiff's RFC. Docket No. 21, p. 5. Therefore, Defendant asserts that the ALJ properly considered Plaintiff's physical and mental impairments when making her determination. *Id.*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as "a *de minimis* hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F. 2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.*, 773 F. 2d 85, 89 (6th Cir. 1985).

Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec. of Health and Human*

9

*Serv.*, 837 F. 2d 240, 244 (6th Cir. 1987). Additionally, a diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations; rather, a claimant must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination. *Lyons v. Comm'r of Soc. Sec.*, No. 310-cv-502, 2012 WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012).

Determining a claimant's limitations for purposes of establishing an RFC occurs in steps four and five of the sequential evaluation process and requires consideration of the combined effect of the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c).

With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar found that Plaintiff had the following severe impairments: fibromyalgia, vision deficits, persistent depressive disorder and generalized anxiety disorder. TR 13. After explicitly finding at step two that Plaintiff had an impairment or combination of

10

impairments that was severe, the ALJ continued her evaluation of the evidence and completed the sequential evaluation process. *See* TR 14-22. The ALJ ultimately determined that Plaintiff retained the RFC for "sedentary work as defined in 20 CFR 416.967(a)." TR 15. The ALJ explained:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except can occasionally climb ramps and stairs, no climbing ladders, ropes and scaffolds. Can frequently balance, occasionally stoop, kneel and crouch, no crawling. Can frequently hand [*sic*] and finger with bilateral hands. Must avoid concentrated exposure to extreme cold. No work with or near dangerous and moving types of equipment or machinery, moving mechanical parts and unprotected heights. Can understand, remember and apply simple and routine instructions and tasks. Can interact occasionally with supervisors, co-workers and the general public. Can maintain concentration, persistence and pace for 2 hours at a time over an 8-hour workday and can adapt to infrequent changes in a work setting.

*Id*.

In so finding, the ALJ considered all symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." TR 16. Specifically, the ALJ stated:

> The claimant alleges disability due to fibromyalgia, ovarian cyst, transaminitis, pancreatitis and severe anxiety (Exs. B2E, B8E, B16E and Hearing). The claimant alleges suffering from pain, excessive menstrual bleeding, dizziness, chronic headaches, numbness and tingling in her arms, hands and legs, weakness in her hands and arms, slurred speech, blurred vision, loss of memory, shaking and twitching, crying spells, sleep deprivation and being around people (Exs. B2E, B4E, B7E, B8E, B11E and Hearing). The claimant alleges prescribed medication causes excessive bleeding, moodiness, weight gain, headaches and hot flashes and anxiety (Exs. B4E, B7E and B8E). As a result, the claimant has difficulty seeing, sitting, standing, squatting, bending, kneeling, using both of her

11

hands, lifting, reaching, walking, climbing the stairs, talking, remembering, understanding, concentrating, following written and spoken instructions, completing tasks, getting around with people, handling stress and handling changes in her routine (Exs. B4E, B7E, B8E and Hearing).

Michael Ramey testified that the claimant has anxiety and as a result experiences excessive shaking along with a lack of motivation. Additionally, he testified that he performs most of her activities of daily living (Hearing).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.*

Next, the ALJ considered Plaintiff's subjective complaints of pain in light of her medical history. TR 17-20. "According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court must first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

12

Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F. 2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F. 3d 1027, 1039 (6th Cir. 1994)*, construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F. 3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F. 2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F. 2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that claimant's statements about the effects of her symptoms were inconsistent with her medical history. TR 17. The ALJ explained her rationale for so finding as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent. The record shows the claimant has a past medical history of degenerative joint disease and sciatic nerve pain along with fibromyalgia and headaches (Exs. B1F, B4F).
>
> In June 2014, the claimant reported to the emergency room with ongoing generalized muscle aches for the last several months ("Patient states that the pains are general and come and go.") (Ex.

B1F, p. 68). The physical examination was unremarkable ("Back: Normal range of motion", "Musculoskeletal: Normal ROM, normal strength, no tenderness, no swelling, no deformity) (Ex. B1F, p. 70). Thus, the record shows the claimant was discharged and diagnosed with myalgia and treatment notes indicated improvement ("Improved, Stable, Patient in absolutely no distress. Seen ambulating. Smiling during exam…") (Ex. B1F, p. 71). Furthermore, in August 2014, the claimant reported to the emergency room with complaints of hot and cold flashes and headaches that have been ongoing for three weeks (Ex. B1F). Computed tomography of her head was unremarkable ("No acute disease process, no intracranial hemorrhage, no midline shift", "Negative exam") (Ex. B1F, pp. 95, 101). Thus, the claimant was discharged and diagnosed with headaches and hot flashes (Ex. B1F).

In February 2015, the claimant reported to the emergency room with complaints of right flank pain for the past month (Ex B1F). Following a physical examination and computed tomography of her abdomen (Ex B1F, pp. 63, 64); the claimant was discharged after one day and diagnosed with nonobstructing renal stone and hematuria (Ex. B1F).

In July 2015, the record shows the claimant reported to the emergency room with complaints of a shoulder injury after moving boxes (Ex. B1F). A physical examination revealed normal range of motion with some tenderness to palpitation of the anterior and posterior right shoulder (Ex. B1F, p. 41). Additionally, diagnostic imaging of her right shoulder was unremarkable ("Within normal lights, normal alignment, no fracture", "Normal right shoulder") (Ex. B1F, pp. 41, 49). Thus, the record shows the claimant was discharged and diagnosed with a shoulder sprain (Ex. B1F). The record shows the claimant was assessed with abdominal pain with gallstones (Ex. B1F). Furthermore, on July 31st, the record shows the claimant underwent surgery, gallbladder removal (Exs. B1F and B2F, p. 16).

In August 2015, the claimant presented to the emergency room with complaints of nausea, vomiting and diarrhea and reported a cholecystomy two weeks ago (Ex. B1F, p. 219). The claimant was discharged and diagnosed with post-operative nausea, vomiting and diarrhea (Ex. B1F). In September 2015, the record shows the claimant was assessed with abdominal pain along with heavy menses along with left lower quadrant pain and nausea (Ex. B2F). Furthermore, in October 2015, the claimant was assessed with diarrhea status post cholecystectomy (Ex. B2F).

14

In January 2016, the claimant was assessed with possible fibromyalgia and chronic diarrhea (Ex. B2F). Additionally, in February 2016, the claimant reported experiencing pain all the time and treatment notes indicated improving bowels (Ex. B2F, p. 17). Thus, the record shows the claimant was assessed with fibromyalgia (Ex. B2F). In July 2016, the claimant was assessed with dysmenorrhea (Ex. B2F). Furthermore, in August 2016, the claimant presented to the emergency room with fibroids on her left ovary and reported using prescribed medication to help control the pain, but she also reported increased left lower quadrant pain (Ex. B1F, p. 178). Thus, the record shows the claimant was discharged and diagnosed with acute on [*sic*] chronic left pelvic pain (Ex. B1F). In September 2016, the record shows the claimant was assessed with ovarian cyst and bacterial vaginosis and in December 2016, the record shows the claimant was assessed with menorrhagia (Exs. B1F and B2F).

In March 2017, the claimant presented to the emergency room [and] reported excessive menstrual bleeding along with dizziness and weakness (Ex. B1F). A physical examination revealed some abnormalities ("Speculum exam: Moderate, bleeding, Blood in the vaginal vault was extremely thin. Few clots…") (Ex. B1F, p. 111). Thus, the record shows the claimant was discharged and diagnosed with vaginal bleeding, complex left cystic lesion on ovary and acute anemia along with dizziness and hypotension (Ex. B1F).

In September 2017, the record shows the claimant reported experiencing menopausal symptoms including hot flashes and anxiety (Ex. B3F). The claimant was assessed with abnormal uterine bleeding and menopausal problem (Exs. B3F and B8F). Treatment notes indicated improvement with prescribed medication ("Mini pill working well to control menses and keep her from having periods.") (Ex. B3F, p. 3).

In August 2018, the claimant presented for a follow-up due to prior diagnoses of anemia (Ex. B8F). Treatment notes indicated the claimant reported fatigue and following a physical examination she was assessed with fatigue (Ex. B8F). More recently, in January 2019 the claimant presented to the emergency room with complaints of upper abdominal and mid back pain (Ex. B7F). Thus, the record shows the claimant was discharged and diagnosed with abdominal pain, pancreatitis and transaminitis (Ex. B7F).

The record documents mental health treatment for complaints of

15

various psychiatric symptoms and it shows the claimant has been variably diagnosed with depression mild persistent depressive disorder, generalized anxiety disorder, alcohol use disorder in sustained remission and rule out dependent personality disorder (Exs. B2F, B4F and B5F). However, the record does not contain any assessment, a Global Assessment of Functioning scaled scores, of the claimant's corresponding functional impairment. Moreover, the overwhelming majority of the claimant's reported mental symptoms actually appear to be understandable acute/transient emotional reactions to common, albeit unfortunate, situational stressors rather than signs of any chronic mental pathology ("Worried about having to have another blood transfusion", "Financial and physical difficulties") (Exs. B12E, B3F and B8F).

More importantly, the record does not document any ongoing objective clinical manifestations of any significant mental pathology, let alone any that would have been expected to produce more than minimal functional limitation for a period of 12-consecutive months since the alleged onset date ("Cooperative, appropriate mood and affect", "Alert and oriented to person, place, time and situations", "Normal sensory observed", "Normal motor observed", "Cooperative", "Normal speech observed", etc.) (Exs. B1F and B7F).

The claimant reported that she stopped working in June 2005 because of her conditions (Ex. B2E). Additionally, the claimant reported difficulty performing activities of daily living (Ex. B11E, p. 4 and Hearing). However, Mr. Ramsey testified that the claimant performs simple household chores, including sweeping and doing the laundry along with preparing simple meals. Additionally, he testified that the claimant watches his daughter who has autism and bipolar disorder (Hearing).

TR 17-19.

Finally, the ALJ considered medical opinion evidence of record when making her RFC and

disability determinations, stating:

As for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those form your medical sources. We fully considered the medical opinions and prior administrative medical findings in your case as follows: Advanced

16

nurse practitioner, Michelle Bulla completed a treating source statement in September 2015 (Ex. B2F). She noticed the claimant was being managed for an illness related to her recent gallbladder surgery (Ex. B2F, p. 29). She opined, "The complications from her surgery will make her unable to return to work until they can be sufficiently controlled…Ms. Button will not be ready to return to work at least until October 11, 2015" (Ex. B2F, p. 29). Ms. Bulla completed a treating source statement in January 2016 and noted the claimant is under her care for chronic diarrhea related to gallbladder removal and possible fibromyalgia (Ex. B2F, p. 23). She opined, "These conditions make it difficult for her to leave her home for extended periods of time." (Ex. B2, p. 23). Furthermore, in February 2016, Ms. Bulla noted, "Because of her symptoms, she finds it difficult to work and leave her home." (Ex. B2F, p. 16). The undersigned finds Ms. Bulla's treating source statements to be persuasive and consistent with the current assessments; however, most recent medical evidence shows changes.

In July 2018, the claimant underwent a consultative physical examination performed by Dr. Terrence Leveck (Ex. B4F). During the examination, the claimant alleged disability due to anxiety, diagnosis of fibromyalgia and diagnosis of left ovarian cyst and uterine fibroids, along with chronic left lower quadrant pain (Ex. B4F). Dr. Leveck noted the claimant was alert and appeared to be in no acute distress (Ex. B4F). The physical examination revealed "Mild tenderness above the left inguinal ligament without guarding, rebound, masses or organomegaly" (Ex. B4F, p. 2). Furthermore, Dr. Leveck noted, "She was mildly tender at 16 of 18 fibromyalgia points." (Ex. B4F, p. 3). Thus, following the examination, Dr. Leveck diagnosed the claimant with anxiety, fibromyalgia and left lower quadrant pain with a history of ovarian cyst with mild tenderness on physical examination and opined the claimant would be able to lift and carry five pounds continuously, 10 pounds frequently and 20 pounds occasionally and could sit, stand and walk for eight hours out of an 8-hour workday with intact fine motor function (Ex. B4F, p. 3). The undersigned finds Dr. Leveck's assessment was persuasive but noted based on the overall record, the claimant had additional physical limitation and opined postural and environmental limitations.

In August 2018, the claimant underwent a consultative psychological evaluation performed by Dr. Jerry Campbell (Ex. B5F). The claimant reported allegations of disability due to severe anxiety, ovarian cyst and fibromyalgia ("The client said the biggest reason she could not work was anxiety which started many years

17

ago.") (Ex. B5F, p. 2). The claimant reported she has not have [*sic*] outpatient mental health treatment in several years ("She went to Centerstone years ago for anxiety, but she has not gone in years because she has no insurance. She has never been hospitalized for anxiety.") (Ex. B5F, p. 2). The mental status examination revealed her motor activity was average with good eye contact and she was oriented (Ex. B5F, p. 2). However, Dr. Campbell noted the claimant's posture and gait were unremarkable and that her speech was pressured (Ex. B5F, p. 2). Following the mental status examination, Dr. Campbell diagnosed the claimant with generalized anxiety disorder, mild persistent depressive disorder, alcohol use disorder in sustained remission and rule out dependent personality disorder (Ex. B5F, p. 4). Furthermore, Dr. Campbell opined the claimant with mild limitations in her ability to perform complex and detailed tasks and moderate limitations in her ability to persist and concentrate, work with the public and her adaptation (Ex. B5F, p. 4). The undersigned finds Dr. Campbell's assessment was persuasive, but lacked consistency because the undersigned opined the claimant has moderate mental limitations in all areas of mental functioning.

The undersigned is not persuaded by the opinions of State agency medical consultants at the initial and reconsideration levels that the claimant has severe medically determinable physical and mental impairments and nonsevere medically determinable physical impairment and that the claimant can do medium work with visual and mental limitations, because the opinions are inconsistent with treatment record[s] showing ongoing pain (Exs. B3A and B6A). Furthermore, the undersigned's residual functional capacity finding was more restrictive placing the claimant at the sedentary exertional level, with postural, manipulative, environmental and mental limitations.

In sum, the above residual functional capacity assessment is supported by medical records and the claimant's testimony and testimony of Michael Ramey. Additionally, the undersigned has taken into consideration the subjective complaints of the claimant, the claimant's medical history and the medical opinions.

TR 19-20.

As can be seen, the ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these

18

factors were considered. *Id.* In fact, the ALJ explicitly cited Plaintiff's ongoing pain and made an RFC finding that was more restrictive than those at the initial and reconsideration levels because of that pain. TR 20. The ALJ's detailed articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F. 3d at 531, *citing Bradley,* 862 F. 2d at 1227; *cf King v. Heckler*, 742 F. 2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F. 2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F. 3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F. 2d at 975.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that claimant's statements about the intensity, persistence, and limiting effects of her pain were inconsistent with her medical history. TR 17. In making this determination, the ALJ observed Plaintiff during her hearing, assessed the medical records, considered the claimant's medical history, and reached a reasoned decision; the ALJ's findings

19

are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.

While Plaintiff is correct that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation, the ALJ should consider a claimant's reported daily activities when rendering an RFC determination. *See, e.g., Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F. 2d 524 (6th Cir. 1992).

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including Plaintiff's severe impairments, subjective complaints of pain, and reported level of activity, and ultimately determined that Plaintiff retained the RFC to perform sedentary work with additional limitations. TR 15. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

### 2. Failure to Develop the Record

Plaintiff argues that the ALJ failed to adequately develop the record. Docket No. 20, p. 5-8. Plaintiff argues that the ALJ failed to obtain Plaintiff's I.Q. testing and failed to ask her treating physician for a medical source statement or an RFC assessment. *Id.* Defendant responds that the ALJ was not required to obtain I.Q. testing in this instance, and that the ALJ did request a statement from Plaintiff's treating physician, but the doctor chose not to provide one. Docket No. 21, p. 11. Additionally, Defendant argues that the ALJ need not rely on a medical opinion to develop the RFC. *Id.* Although Plaintiff correctly asserts that the ALJ must fully develop the record, Plaintiff fails to show that the ALJ did not do so.

The duty of the ALJ is to "fully and fairly develop the administrative record," and where the evidence suggests that a claimant may well meet a listed impairment, the ALJ must develop

20

the evidence in order to determine whether or not the listing is met. *Johnson v. Sec'y of Health & Human Servs.,* 794 F. 2d 1106, 1111 (6th Cir. 1986). In doing so, the ALJ must identify the reasons and basis for crediting or rejecting certain items of evidence. *See, e.g., Morehead Marine Servs. v. Washnock*, 135 F. 3d 366, 375 (6th Cir. 1998). This is because there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision. *Hyatt Corp. v. N.L.R.B.*, 939 F. d 361, 367 (6th Cir. 1991).

The Findings of Fact and Conclusions of Law section of the ALJ's decision in the case at bar specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these were considered. TR 13-21. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support the Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with the Plaintiff's allegations. This is within the ALJ's province.

The ALJ did not have a duty to order an I.Q. test of Plaintiff. An "ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001), *citing* 20 CFR 404.1517, 416.917. According to the administrative transcript, Plaintiff demonstrated normal cognition (TR 840), and her intelligence was determined to be low average to average (TR 811). Plaintiff asserts that there is evidence on file of her participation in special education classes in the past, as well as evidence of limited reading and writing capabilities. Docket No. 20, p. 6. However, Plaintiff indicated in her disability report dated 05/16/2018 that she has not attended special education classes. TR 184. The record reflects that the ALJ acted within her discretion by not ordering an I.Q. test because there is no evidence that an I.Q. test was required.

Plaintiff also claims that the ALJ never asked her doctor to complete a medical source

21

statement.  Docket No. 20, p. 8.  However, as Defendant notes, the Commissioner did request a statement from Plaintiff's treating physician, Dr. McIntosh.  *See* TR 804.  Dr. McIntosh did not provide one and the Commissioner cannot force her to do so.  Instead, the ALJ relied on medical evidence from a range of other sources in the record.  *See*, TR 16-20.  The ALJ relied on the treating source statements from Michelle Bula from September 2015 (TR 794-800) and January 2016 (TR 788-793), a consultative examination by Dr. Terrence Leveck in July 2018 (TR 805-808), and a consultative examination by Dr. Jerry Campbell in August 2018 (TR 809-813) when making her disability and RFC determinations.  TR 19-20.  Further, the ultimate determination of disability and RFC is reserved for the ALJ, and the Sixth Circuit has "rejected the argument that [an RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."  *Mokbel-Aljahmi v. Commissioner of Social Security,* 732 F. App'x 395, 401 (6th Cir 2018); *See* 20 C.F.R. § 404.1527.  Even so, the ALJ relied on the medical source evidence of record to make her determinations, and she did not fail to develop the record by not receiving a medical source statement from Dr. McIntosh.

Because the ALJ developed the evidence and adequately explained the reasons and basis for her conclusions, and because the ALJ's findings are supported by "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," substantial evidence exists, and the decision of the ALJ must stand.

### 3. The RFC is More Restrictive than the Hypothetical Question Posed to the VE

Plaintiff argues that the ALJ's hypothetical questions posed to the VE did not accurately reflect her exertional and nonexertional limitations, and therefore that the ALJ erred in relying upon the VE's testimony to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform.  Docket No. 20, p. 8.  Specifically, Plaintiff argues that the

22

ALJ's RFC determination is more restrictive than the hypothetical individuals posed to the VE during the hearing, and therefore the VE's testimony was improper. *Id.* Defendant responds that, contrary to Plaintiff's assertion, the VE testified in response to a hypothetical question that incorporated the same limitations as those included in the ALJ's RFC finding. Docket No. 21, p. 14. The record reflects that the ALJ's RFC finding is consistent with the hypothetical posed to the VE and Plaintiff's claim fails. TR 15.

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 CFR §§ 404.1520, 416.920. *See also Moon*, 923 F. 2d at 1181. The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations. *Abbot v. Sullivan*, 905 F. 2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F. 2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

23

At Plaintiff's hearing, the ALJ in the instant action posed several hypothetical questions to

the VE. TR 53-55. The ALJ first queried:

> Q: Assume an individual of the claimant's age, education and past relevant work experience. This individual is at the light exertional level with the following restrictions: can occasionally climb ramps and stairs, no climbing ladders, ropes and scaffolds; can frequently balance, occasionally stoop, kneel, crouch, no crawling; must---strike that---can frequently handle and finger with bilateral hands; must avoid concentrated exposure to extreme cold; no work with [INDISCERNIBLE] and moving types of equipment or machinery, moving mechanical parts, unprotected heights; can understand, remember and apply simple and routine instructions and tasks; can interact occasionally with supervisors, co-workers and the general public; can maintain concentration, persistence and a pace for two hours at a time over an eight-hour workday; can adapt to infrequent changes in work setting.
>
> Any work for such an individual?
>
> A: Your honor, based on this hypothetical, the answer is yes. There are unskilled jobs that such an individual can perform.
> And that is the job of a cashier II, 211.462-010, light, SVP of 2, 1,260,898
>
> We have assembler, small products, identified under DOT number 739.687-030, light, SVP of 2, 194,186.
>
> And we have bottling line attendant, and this is a manual bottling line attendant, not one that is automated, so no dangerous machinery or equipment around, and that is identified under DOT number 920.687-042, light, SVP of 1, 311,457.

TR 53-54.

The ALJ then modified the hypothetical question and queried:

> Q: And a second hypothetical, all limitations as in hypothetical one, however, this individual is unable to work with small objects, such as threading a needle or such size objects, coins.
>
> A: Your Honor, based on this hypothetical, I still believe that the jobs that I mentioned would be viable jobs.

24

> Q:     What about that assembler, small products?
>
> A:     Well, the products are small, not the objects that they're
> assembling with, so it's on—well, there could be a 30 percent
> reduction there, meaning that approximately 130,000 jobs available.

TR 54-55.

Finally, the ALJ queried:

> Q:     Okay. And a third hypothetical, all limitations as in
> hypothetical one but this individual is at the sedentary exertional
> level.
>
> A:     Here we are dealing with document preparer, 249.587-018,
> sedentary, SVP of 2, 90,537.
>
> Charge account clerk, 205.367-014, sedentary, SVP of 2, 33,485.
>
> And telephone quotation clerk, identified under DOT number
> 237.367-046, sedentary, SVP of 2, 88,779.

TR 55.

As can be seen, the ALJ posed several hypothetical questions to the VE, each incorporating different combinations of exertional and nonexertional limitations alleged by Plaintiff and/or contained within the record. TR 53-55. As has been discussed in the statements of error above, the ALJ properly evaluated the evidence, found that Plaintiff's allegations were not fully credible, and ultimately determined that Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR 416.967(a) except can
> occasionally climb ramps and stairs, no climbing ladders, ropes and
> scaffolds. Can frequently balance, occasionally stoop, kneel and
> crouch, no crawling. Can frequently hand[le] and finger with
> bilateral hands. Must avoid concentrated exposure to extreme cold.
> No work with or near dangerous and moving types of equipment or
> machinery, moving mechanical parts and unprotected heights. Can
> understand, remember, and apply simple and routine instructions
> and tasks. Can interact occasionally with supervisors, co-workers

and the general public.  Can maintain concentration, persistence and pace for 2 hours at a time over an 8-hour workday and can adapt to infrequent changes in a work setting.

TR 15.

An ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations.  *See Varley*, 820 F. 2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

In the instant action, the hypothetical questions posed to the VE by the ALJ, upon which the ALJ relied to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform, accurately reflected the limitations that the ALJ found credible, consistent with, and supported by, the evidence of record.  *See* TR 53-55.  Because the hypothetical questions upon which the ALJ ultimately rendered her decision accurately represented Plaintiff's credible limitations, the ALJ properly relied on the VE's answer to those hypothetical questions to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform.  *See Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F. 2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F. 2d at 779.  Additionally, the ALJ's RFC finding was not more restrictive than the hypothetical questions posed to the VE but was in fact identical to those questions.  *See* TR 15, 53-55.  Accordingly, Plaintiff's claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**